IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES D. CRANDLE., | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION 17-0140-JB-MU |
| | : | |
| MR. SINGLETON, *et al.*, | : | |
| Defendants. | : | |

**REPORT & RECOMMENDATION**

Plaintiff James D. Crandle filed this *pro se* civil rights suit under 42 U.S.C. § 1983 while incarcerated at the Mobile County Metro Jail and was allowed to proceed *in forma pauperis*.[1] Plaintiff alleges that Defendants violated his constitutional right to the free exercise of his religion. Plaintiff seeks injunctive relief to attend his religion class and services, monetary damages in the amount of $5,000.00, and release from Mobile County Metro Jail against the following defendants: Chaplain Mr. Singleton, Chapel Administrator Therese Brown, Mobile County, Alabama Sheriff Sam Cochran, and Mobile Area Interfaith Conference.[2]

Pursuant to orders of the court, Defendants filed answers, with supporting evidentiary materials, in response to the allegations contained in the complaint. The court

---

[1] This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R).

[2] Mobile Area Interfaith Conference, Inc. ("Interfaith") moved to intervene in the action for the purposes of joining Defendants Mr. Singleton and Teresa Brown in defending against the claims of Plaintiff. (Doc. 11). Interfaith executed a contract with Sam Cochran, Sheriff of Mobile County, to provide chaplain services to the Mobile County Metro Jail. At all times relevant to this cause of action, Mr. Singleton and Teresa Brown were employed by Interfaith. The court granted Interfaith's motion to intervene. (Doc. 17).

converted Defendants' responses into a motion for summary judgment and explained to Plaintiff the proper way to respond to such motion for summary judgment. (Doc. 25). Plaintiff responded to the motion, indicating his intent to continue litigation, but provided no further factual information or allegations. This case is now pending before the court on Defendants' motion for summary judgment.

After careful review, it is recommended that summary judgment should be **GRANTED**, as discussed herein.

I. **Summary Judgment Standard.**

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)[3]; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'"(emphasis omitted)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[3] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment[, however,] remains unchanged. . . . The amendments [have] not affect[ed] continuing development of the decisional law construing and applying these phrases." Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments.

2

the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. See Anderson, 477 U.S. at 255.

ThyssenKrupp Steel USA, LLC v. United Forming, Inc., 926 F. Supp. 2d 1286, 1289-90 (S.D. Ala. Jan. 29, 2013) (citations omitted).

The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to material facts." Garczynski, 573 F.3d at 1165 (internal citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. Id. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris,

3

550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); see also Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. Aug. 29, 2011) ("In cases where opposing parties tell different versions of the same events one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations." (citations omitted) (unpublished)).[4]

## II. Summary Judgment Facts.

While attending a religion class at Mobile County Metro Jail ("the jail"), on March 15, 2017, Plaintiff exchanged a note with another inmate, Johnnie Fenn. Chaplain Singleton observed the exchange and asked Plaintiff to show the note, but Plaintiff refused. According to Plaintiff, Inmate Johnny Fenn was scheduled to leave Mobile County Metro Jail that day, and the note contained Inmate Fenn's phone number, so the two could keep in contact. Thereafter, on March 21, 2017, Plaintiff was informed by Mr. Singleton that he was suspended from any religious service or class until further notice, "[d]ue to the inappropriate behavior with passing a note from Johnnie Fenn in the Chapel and refusing to turn it over to Chaplain Singleton on March 15, 2017. The Chapel does not allow any notes to be passed." (Doc. 12 at 13). Plaintiff claims the suspension violates his constitutional right to freely exercise his religion. (Doc. 1; Doc. 12 at 14). As of March 30, 2017, when Plaintiff filed this suit, Plaintiff was still being denied attendance to religious services at Mobile County Metro Jail. (Doc. 1 at 6-7).

Defendants deny that Plaintiff's constitutional rights were violated and maintain that all actions taken against Plaintiff were done for legitimate justifiable purposes, namely

---

[4] "Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." 11th Cir. R. 36-2.

internal jail security. (See Docs. 9, 12-16). Specifically, Defendants contend that Plaintiff was suspended from chapel services for 30 days, as punishment for "forbidden actions" of passing a note in chapel and causing a disturbance when Chaplin Singleton requested the note. (Doc. 12 at 1; Doc. 13 at 2).

  III.   Discussion.

Convicted prisoners do not forfeit all constitutional protections when they enter prison, including their First Amendment right to the free exercise of religion. Bell v. Wolfish, 441 U.S. 520, 545, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) ("[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison."); Pell v. Procunier, 417 U.S. 817, 822, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974) (""[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."). It is also well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights." Price v. Johnston, 344 U.S. 266, 285, 68 S. Ct. 1049, 92 L. Ed. 1356 (1948). Accordingly, challenges to prison restrictions which "inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system." Pell, 417 U.S. at 822. Such restrictions are constitutional if they are "reasonably related" to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987) (In evaluating the reasonableness issue, the following factors are generally considered: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remains open to prison inmates;

(3) the impact that accommodation of the asserted constitutional right will have on guards, other inmates, and on the allocation of prison resources; and, (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimus* costs to valid peneological interests.).

Plaintiff fails to allege that his suspension from religious services was not reasonably related to legitimate security interests of the jail. See id. Indeed, the record evidences that chapel services at the jail are considered a privilege, one which is not extended to all inmates at the jail. (Doc. 13 at 1). The chapel services are operated exclusively by Mobile Area Interfaith Conference ("Interfaith"), and it is Interfaith's staff and volunteers who are in charge of religious services at the jail. Thus, no officers are present during the religious services. (Id.). Consequently, Interfaith staff and volunteers meet weekly with jail staff to discuss security issues, and all policies are strictly enforced to ensure the safety of the participants of the religious services. (Doc. 13 at 1).

Defendants have shown that on March 15, 2017, Plaintiff failed to abide by the security restrictions put in place by Interfaith and the jail, and Plaintiff does not dispute this. Therefore, Plaintiff's suspension from religious services is clearly reasonably related to a legitimate penological interest – the safety of the Interfaith volunteers and the chapel service attendees. Additionally, Plaintiff puts forth no evidence or allegations that he was not allowed to possess religious materials and worship within his cell and/or that his temporary suspension from a specific location to engage in worship services unduly burdened his ability to engage in the practice of Catholicism (his religion).

Based on the evidence presented, Plaintiff has not met his burden of showing any genuine issues of material fact requiring a trial. The evidence does not support the

conclusion that Plaintiff's First Amendment right to exercise his religion was violated. Instead, the record shows the imposed suspension was reasonably connected to maintaining institutional safety and security. Thus, Defendants are entitled to summary judgment.[5]

IV. Conclusion.

Based upon the foregoing, Plaintiff has failed to establish a constitutional violation against Defendants. Accordingly, it is recommended that Defendants' Motion for Summary Judgment be **GRANTED**, and Plaintiff Crandle's action be dismissed with prejudice.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a]

---

[5] Notably, Plaintiff's requests for injunctive relief are moot or not actionable in a § 1983 suit. First, Plaintiff's request to return to chapel appears to be moot. Defendants aver that Plaintiff received a 30-day suspension from religious service; thus, the suspension should have terminated on or about April 21, 2017. (Doc. 12 at 1, 13; Doc. 13 at 2). Second, Plaintiff's request to be "release[d] from this jail" is not actionable through this suit. Release from incarceration cannot be gained in § 1983 actions. Preiser v. Rodriguez, 411 U.S. 475, 500 (1973). Release can only be granted in a habeas corpus proceeding. Id.

party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **ORDERED** this **18th** day of **June, 2020**

                                        **s/ P. Bradley Murray**
                                        **UNITED STATES MAGISTRATE JUDGE**